Commonwealth, ex rel. Gregor Stein, Plff. in Err., v. Alexander Æ. McCandless, Treasurer of Allegheny County.

Commonwealth, ex rel. Peter Miller, Plff. in Err., v. Same.

Commonwealth, ex rel. Rudolph Raphael, Plff. in Err., v. Same.

The acts of May 13, 1887, and May 24, 1887 (P. L. 108, 194), repeal the act of April 3, 1872, entitled "An Act to Regulate the Sale of Intoxicating Liquors in the County of Allegheny."

(Argued November 7, 1887.   Decided January 3, 1888.)

October Term, 1887, Nos. 239, 240, 241, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Common Pleas No. 1 of Allegheny County to review judgments on demurrers in favor of the defendant.   Affirmed.

The petitions of Gregor Stein, Peter Miller, and Rudolph Raphael set forth that they made demand of the defendant, as treasurer of Allegheny county, for the issuing of licenses to sell liquor, and tendered to him, the said treasurer, the license fee provided for by the act of 1872 ($100), and also tendered to him a bond as provided by the said act, with sureties satisfactory to the county treasurer, and in all respects complied with the provisions of the act of April 3, 1872, regulating the issuing of licenses in Allegheny county.   That the treasurer refused to issue a license solely because he had no legal authority to do so.   The petitioners prayed for a mandamus to compel the treasurer to issue the license.

Gregor Stein and Peter Miller applied for a retail license, Rudolph Raphael for a wholesale license.

It was agreed that the answer to the rule to show cause in each case should stand as the answer to the writ of alternati---

mandamus. Omitting the formal parts of the answer its language is this: "In answer to the petition filed by the relator upon which said rule was granted, the defendant says that the facts therein contained are true and correct to the best of his knowledge and belief, but that since the passage of the act of the general assembly of the state of Pennsylvania, approved May 13, 1887, entitled 'An Act to Restrain and Regulate the Sale of Vinous, Spirituous, Malt, and Brewed Liquors or any Admixture Thereof,' he has no authority or power under the law to issue any such license to sell liquors as that demanded by the relator in this case."

The court entered judgment on the demurrer in favor of the defendant in each case, filing the following opinion in the Stein and Miller cases:

The general intent of the legislature to repeal all existing laws in the commonwealth in reference to granting licenses for the sale of liquors, by less quantity than one quart, and substitute a new system, seems to us very apparent from many provisions in the act of 13th of May, 1887.

The title is: "An Act to Restrain and Regulate the Sale of Vinous, etc., Liquors, or any Admixture Thereof," and as there is no limitation it must be read as though declaring in terms "in the commonwealth of Pennsylvania." The first section declares it "shall be unlawful to keep or maintain any house . . . where any vinous . . . liquors, or any admixture thereof, are sold, by retail [less than a quart] except a license therefor shall have been previously obtained, as hereinafter provided," and section third, "such licenses may be granted only by the court of quarter sessions of the proper county," and then adds "provided that license under previous laws shall not be granted later than June 30 of this year," which is equivalent to saying that license may be granted under existing law until June 30, 1887, but not thereafter. Nothing can be more comprehensive than these sections of the act. They are general in their terms, and they make it unlawful for any person in the state of Pennsylvania to keep any place for the sale of the liquors specified, by less measure than a quart, unless such person shall have first obtained a license from the court of quarter sessions of the proper county, which clearly means the county where the license is intended to be used. The license law of 1856 uses the same expression, but with a limitation

clearly showing its general significance, to wit: "Licenses shall be granted by the courts of the proper county except Philadelphia and Allegheny."

The same form is also used in the act of the 12th of April, 1875, but with the exception "where not otherwise provided by law." Evidently the sole purpose of the term "proper county" was to designate the particular court of quarter sessions empowered to grant the license in relation to the location of the place of business of the applicant for license.

Section 4 of the act provided that "every person intending to apply for a license as aforesaid, in any city or county of this commonwealth, . . . shall file with the clerk of the court of quarter sessions of the proper county, his, her, or their petition." And then provision is made with reference to Philadelphia, as follows: Provided also "that in cities of the first class, in the month of January in each and every year, it shall be the duty of the mercantile appraisers to return, under oath, . . . to the clerk of the court of quarter sessions," etc. The legislature must be assumed to know that Philadelphia was the only city of the first class in the state, and therefore that the act was by its terms intended to be in force there.

Section 8 also says: "Persons licensed to sell by retail in cities of the first, second, and third classes," etc. As the legislature knew that Philadelphia was the only city of the first class, the same conclusion follows as to Pittsburgh, which is the only city of the second class. It seems therefore impossible for us not to conclude that the legislature intended to include Allegheny and Philadelphia within the operation of this statute.

But while the intention is apparent from these several provisions of this act that the act was intended to be general in its operation, it does not necessarily follow that the special act of 1872, regulating the granting of licenses in Allegheny county, is thereby repealed. If, as contended by the plaintiffs in this case, these statutes can stand together and are not radically inconsistent with each other, the local law is still in force. To repeal a local law by a general law in the absence of a repealing clause, the repugnancy between the provisions of the new law and the old must appear so positive as to make them irreconcilable. *Vide Re* Barber, 86 Pa. 392; Com. v. Erie R. Co. 98 Pa. 127; and Sifred v. Com. 104 Pa. 181. But every affirmative

statute is a repeal of a precedent statute whenever its matter implies a negative. 98 Pa. 127.

While this act of May 13, 1887, has no clause in terms repealing any general or local statute in the state, it has provisions absolutely and radically inconsistent with the act of 1872, authorizing the granting of licenses in this county by the treasurer.

Thus we have seen that the first section declares that it shall be unlawful to sell in less quantity than a quart without license, and that § 3 says: "Such license shall only be granted by the court of quarter sessions." How then can it be said that the treasurer may grant a license?

These sections, not by implication merely but positively and clearly, as an inevitable result, take away the previous authority of the treasurer to grant a retail license under the act of 1872, if this act of 1887 is constitutional and in force in this county.

The suggestion of unconstitutionality we shall merely notice by saying (without entering into any argument on the subject) that the very earnest and able argument of counsel has failed to make it appear to us that the act is unconstitutional. The impropriety of an inferior court declaring an act unconstitutional except on extraordinary occasions in the clearest cases is manifest.

Then, assuming the act to be constitutional, that it is general in its character and that it is utterly inconsistent (so far as the questions now before us are concerned) with the special act of 1872, have petitioners made it sufficiently appear that it is not in force in this county? Considerable stress has been laid on the proviso exempting places having special prohibitory laws from the operation of the act, but we think this has no force. This law would not have been changed in those localities without this proviso. It merely left the act as if the proviso had not been inserted. But a somewhat different question arises out of the first part of § 19, *viz.:* "All local laws fixing a license rate or fee less than is provided for in this act be and the same are hereby repealed." By the ordinary rules of interpretation this would seem to mean that local laws fixing a higher rate of license were not repealed, and if we could adopt the conclusion in reference to this act, that it did not repeal local laws where a greater license fee was fixed therein, we would be entangled in a maze of uncertainty as to whether the act of 1887

did impose a greater or less license fee than the act of 1872. In one respect it does, in another it does not. In cities it is greater, in boroughs and townships it is less. The possible revenue under the act of 1872 for the same number of licenses, taking cities, boroughs and townships together, seems to me to be much larger on the whole than could be derived under this act of 1887.

But it is said in Com. v. Fraim, 16 Pa. 169: "Statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute; and when discovered it ought to be followed with judgment and discretion in the construction, although that construction may seem contrary to the letter of the statute. It is said a thing within the letter of the statute is not within the statute unless it be within the intention of the makers; and such construction ought to be put on it as does not suffer it to be eluded."

So in Holl v. Deshler, 71 Pa. 299: "Every part of a statute should be brought into action in order to collect from the whole one uniform and consistent sense, if that may be done; or in other words, the construction must be made upon the entire statute and not merely upon disjointed parts of it."

Now here, the general intent, as we have said, is to compel every person in the state, desiring a license to sell liquors, to get it from a court of quarter sessions, under the provisions of this act.

The eighth section provides "that all persons licensed to sell at retail shall be classified and required to pay annually for such privileges as follows: persons licensed to sell by retail in cities of the first, second, and third classes, shall pay the sum of $500," and then follows the fee for boroughs and townships.

This fixes, beyond question, that the act was intended to extend to cities of the second class, which means Pittsburgh, as it is the only city of that class. The act cannot extend to Pittsburgh if the act of 1872 is in force in this county, for it would be absurd to suppose that the legislature meant to have one system for the city and another for the townships and boroughs; and therefore to hold that the nineteenth section by implication saved the special act of 1872 would be to set aside not only the general intent, but the plain terms of the statute, by mere in-

ference or implication, which would be in clear violation of all rules of interpretation.

The true solution we take to be this: The legal inference that all local acts where there was a larger rate of license fixed by local law are saved arises from the terms of § 19, taken by itself. That is to say, if there had been nothing in the act showing an intention to repeal all local laws, whatever the rate of license may have been, higher or lower, as the case might be, then by this section all local laws fixing higher rates would have been saved. But as it appears to us beyond question that without the nineteenth section all local license laws were repealed, this section merely declared that which would have been the law without it, and leaves all other local laws to abide the general effect of the act, just as if the section had not been inserted.

For these reasons the demurrers are overruled. Peremptory mandamuses are refused and judgment entered on the demurrers in favor of the defendant, and that the plaintiffs pay the costs of these proceedings.

The opinion of the court below in the Raphael Case was as follows:

The case of Rudolph Raphael, asking for a wholesale license, involving a construction of the act of the 24th day of May, 1887, entitled "An Act Providing for the Licensing of Wholesale Dealers in Intoxicating Liquors," is in the main governed by the same principles arising in the cases of applications for retail licenses, just decided, and what was said there will, to a great extent, be pertinent here. But as this act also provides that wholesale licenses shall be granted only by the court of quarter sessions of the proper county, "as provided by existing laws," and there were no laws existing at the date of this act in Allegheny county, under which the court could grant a wholesale license, it is argued that the act cannot apply to this county. There were laws existing under which wholesale licenses could be granted by perhaps all of the courts of quarter sessions in the state, except in Philadelphia and Allegheny counties; and as these were the only laws under which courts could grant licenses, the natural conclusion is that those were the laws referred to by the legislature, and not laws which had no existence. *Quod hæret in litera, hæret in cortice.*

*D. T. Watson, A. M. Brown,* and *Josiah Cohen,* for plaintiff in error.—The act of 1872 is a special law relating solely to Allegheny county, and passed to provide for it alone; and there being no express words of repeal in the act of 1887, and no negative words applying to the issuing of licenses by the treasurer of Allegheny county, and there being no irreconcilable repugnancy between the act of 1887, and the act of 1872, the latter is not repealed. Erie v. Bootz, 72 Pa. 199.

Whatever may have been the legislative thought, no ambiguity exists in what was said; and when the words of a statute are plainly expressive of an intent, the interpretation must be in accordance therewith. Bradbury v. Wagenhorst, 54 Pa. 182.

Certainly few sections of statutes are plainer than this: "All local laws fixing a less license rate are repealed."

The express declaration: That it was local laws fixing less license rates that were to be repealed, is as definitive .. declaration that the local license laws fixing higher rates are not repealed, as if in so many words the legislature had so said. Oliver's Appeal, 101 Pa. 303; Butler's Appeal, 73 Pa. 452; Com. *ex rel.* Bridgewater v. Montrose, 52 Pa. 391; Bucher v. Com. 103 Pa. 534; Patterson's Appeal, 96 Pa. 95; Erkenbrach v. Erkenbrach, 96 N. Y. 466; Johns v. Hodges, 62 Md. 538; State *ex rel.* Vance v. Wilson, 30 Kan. 673, 2 Pac. 828.

Nor should it be overlooked in the consideration of § 19 that it deals with the question of repeal of one act of assembly by another act, and that the rule stated as early as the time of Lord Coke and reitered by this court is to repeal as little as possible of preceding statutes. 11 Rep. 63; Brown v. Philadelphia County, 21 Pa. 43.

In *Re* Bounty Accounts, 70 Pa. 96, this court, quoting from English decisions, affirmed the following statements of the rule:

"Where the legislature has vested special powers in a particular body for certain special purposes, a general act subsequently passed will not override those special powers. . . . A general act is not to be construed to repeal a previous particular act unless there is some express reference to the previous legislation on the subject or unless there is a necessary inconsistency in the two acts standing together." See also Rounds v. Waymart, 81 Pa. 395; Seifried v. Com. 101 Pa. 202.

The accepted rule being to repeal as little as possible of the

prior statute (Erie v. Bootz, 72 Pa. 199), and it being, in the language of this court, "against reason to suppose that the legislature in framing a general system for the state intended to repeal a special act, which the local circumstances of one county had made necessary," and the act of 1872 being passed to meet the "local circumstances" of Allegheny county, are additional and strongly persuasive reasons why the proper construction of § 19 should be to save the act of 1872.

When § 8 speaks of cities of the second class it does not individuate and name Pittsburgh, but it refers to a class. That Pittsburgh is now the only city of the second class does not show that the legislature, by the language used in § 8, meant to single out Pittsburgh. The words used are: "cities of the first, second, and third class," not city of the second class. The act of 1887 was for the future, when the population of other places might bring them within the classification of cities of the second class. Wheeler v. Philadelphia, 77 Pa. 350; Kilgore v. Magee, 85 Pa. 411.

But aside from the objections raised against these two bills in their application to Allegheny county, it is suggested that neither is valid in any part of the state, when tested by the several provisions of the Constitution.

We urge that the act of May 13, 1887, is in conflict with § 3, of art. 3, of the state Constitution, containing as it does more than one subject, and because the subject-matter thereof is not clearly expressed in the title to said act. There is no indication in the title to either the wholesale or the retail act, that the intention of the legislature was to repeal the act of 1872, then governing the sale of liquors in Allegheny county. *Re* Road, 109 Pa. 44; Beckert v. Allegheny, 85 Pa. 192.

These acts further conflict with § 7, art. 3, Pa. Const., forbidding the general assembly to pass any special law regulating the affairs of counties, cities, townships, wards, boroughs, or school districts.

The retail act expressly exempts from its operation any city, county, borough, or township having special prohibitory laws. There are numbers of such laws existing. Their exclusion makes the act under consideration special and is therefore in conflict with the letter and spirit of the Constitution.

"The exclusion of a single county from the operation of an

act makes it local." Scranton v. Silkman, 113 Pa. 199, 6 Atl. 146.

Scranton School Dist.'s Appeal, 113 Pa. 176, 6 Atl. 158, is to the same effect, in which it was held that "if local results either are or may be produced by a piece of legislation, it offends against this provision of the Constitution and is void." See also Com. *ex rel.* Fertig v. Patton, 88 Pa. 259; Davis v. Clark, 106 Pa. 377; McCarthy v. Com. 110 Pa. 243, 2 Atl. 423.

In Davis v. Clark, this court said: "As a legal principle it is as effectually local when it applies to sixty-five counties out of sixty-seven, as if it applied to one only. The exclusion of a single county from the operation of the act makes it local."

*W. B. Rodgers* and *W. C. Moreland,* for defendant in error.—The act of May 13, 1887, entitled "An Act to Restrain and Regulate the Sale of Vinous and Spirituous Malt or Brewed Liquors, or any Admixture Thereof," repeals the act of April 3, 1872, entitled "An Act to Regulate the Sale of Intoxicating Liquors in the County of Allegheny," in so far as the two acts are inconsistent. The two acts are inconsistent as regards the manner of granting licenses, and the amount of the license fees and their distribution; and therefore the judgments in the cases of the retailers should be affirmed.

It may be conceded that, to repeal a local law by a general law, in the absence of a repealing clause, the repugnancy between the provisions of the new law and the old must appear so positive as to make them irreconcilable. *Re* Barber, 86 Pa. 392; Com. v. Erie R. Co. 98 Pa. 127; Sifred v. Com. 104 Pa. 181.

But "every affirmative statute is a repeal of a precedent affirmative statute where its matter necessarily implies a negative."

And a subsequent affirmative statute is a repeal by implication of a former one made concerning the same matter, if it introduce a new rule upon the subject, and be evidently intended as a substitute for the former law; and this must be so held, although it contained no express words to that effect on the principles of law, as well as in reason and common sense. Johnston's Estate, 33 Pa. 511; Com. v. Cromley, 1 Ashm. (Pa.) 181.

If a later act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first, it will operate as a repeal. United States v. Tynen, 11 Wall. 88, 20 L. ed. 153.

Whether a subsequent general statute repeals a prior special one, in the absence of express words, depends upon the intention of the legislature; and one of the tests frequently resorted to, to ascertain whether there is a repeal by implication, is to inquire whether the special and general act may both be executed without involving repugnancy of right or remedies. People v. Jaehne, 103 N. Y. 182, 8 N. E. 374; Nusser v. Com. 25 Pa. 126.

As to wholesale dealers:

The act of May 24, 1887, repeals the special act of April 3, 1872.

PER CURIAM:

In the cases before us, we concur with the court below in holding that the act of 1887 repealed that of 1872; hence, had the treasurer assumed to issue the required licenses he would have acted without warrant of law.

The judgments are affirmed.